UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BAKER HUGHES SAUDI ARABIA CO. LTD. | CIVIL ACTION |
| VERSUS | NO: 23-1396 |
| DYNAMIC INDUSTRIES, INC., DYNAMIC INDUSTRIES INTERNATIONAL, L.L.C., and DYNAMIC INDUSTRIES INTERNATIONAL HOLDINGS, INC. | SECTION: T (4) |

**<u>ORDER AND REASONS</u>**

On January 27, 2025, the United States Court of Appeals for the Fifth Circuit reversed the district court's November 2, 2023, Order (R. Doc. 19) denying Defendants' motion to compel arbitration and dismiss or stay this action (R. Doc. 8) and remanded this action for further proceedings consistent with its opinion. R. Doc. 27-1 (*Baker Hughes Saudi Arabia Co. Ltd. v. Dynamic Indus., Inc.*, 126 F.4th 1073 (5th Cir. 2025)). Specifically, this Court was directed to determine whether the DIFC-LCIA Arbitration Rules ("DIFC-LCIA Rules") referenced in the parties' Subcontract can be applied by an available arbitral forum consistent with the parties' objective intent. R. Doc. 27-1, p. 29. The Fifth Circuit also directed this Court to consider whether arbitration should otherwise be compelled in Saudi Arabia pursuant to Schedule A of the subcontract if no available forum can apply the DIFC-LCIA Rules. *Id.* Plaintiff, Baker Hughes Saudi Arabia Co. Ltd. ("Baker Hughes") briefed the issues raised by the Fifth Circuit, R. Doc. 30, as did Defendants, Dynamic Industries, Inc. ("DI"), Dynamic Industries International, L.L.C.

1

("DII"), and Dynamic Industries International Holdings, Inc. ("DIIH") (collectively, "Defendants"), R. Doc. 39. Plaintiff filed a reply to address Defendants' arguments. R. Doc. 40.

For the following reasons, the Court finds that the arbitration may be compelled before the Dubai International Arbitration Centre ("DIAC") in a manner consistent with both the parties' dominant intent and the Fifth Circuit's instructions on remand. Accordingly, Defendants' Motion to Dismiss for Forum Non Conveniens or to Compel Arbitration and Stay Pending Arbitration (R. Doc. 8) is GRANTED IN PART and DENIED IN PART, and this action is STAYED and ADMINISTRATIVELY CLOSED pending arbitration. Additionally, Defendants' recently filed Motion for Issuance of Immediate Stay and/or Immediate Restraining Order/Preliminary Injunction Against Plaintiff (R. Doc. 44) is DENIED AS MOOT. The parties are directed to proceed to arbitration in accordance with the terms set forth below.

## I. BACKGROUND

This case arises from a contractual dispute between Plaintiff and Defendants.[1] On December 20, 2017, Plaintiff contracted with Defendants to supply materials, products, and services for an oil and gas project being performed by Defendants in Saudi Arabia (the "Subcontract"). R. Doc. 1-1, p. 3. Plaintiff alleges that it fully performed its obligations under the Subcontract, but that Defendants have failed to pay $1.355 million owed to Plaintiff for those services. *Id.* at p. 4. The Subcontract contains two provisions governing a dispute resolution process. R. Doc. 27-1, p. 4. First, Schedule A allows Defendants to elect to arbitrate any dispute arising out of the subcontract in Saudi Arabia. R. Doc. 8-2, pp. 73-76; *see also* R. Doc. 27-1, p. 5.

---

[1] The challenged contract is facially between Plaintiff and Dynamic Industries Saudi Arabia, Ltd. ("DISA"). *See* R. Doc. 8-2, pp.1-4 ("Subcontract for Procurement and Construction" between DISA and Plaintiff). However, Plaintiff asserts that DISA "is merely a shell company and alter ego of" the Defendants named in this suit. R. Doc. 1-1 at 3. Because Defendants do not directly challenge this assertion, for the purpose of this Order, the Court will assume that Defendants directly entered into the Subcontract with Plaintiff and use the term "Defendants" to refer to both DISA and the defendants named in this suit.

2

Second, Schedule E provides an alternative dispute-resolution provision, calling first for mediation and then, if mediation is unsuccessful, for arbitration. R. Doc. 8-2; *see also* R. Doc. 27-1, pp. 5-6. Schedule E specifies that arbitration shall occur in accordance with the Arbitration Rules of the Dubai International Financial Center London Court of International Arbitration ("DIFC-LCIA"), with the seat of arbitration designated as the Dubai International Financial Centre ("DIFC").[2] R. Doc. 8-2, p. 94; *see also* R. Doc. 27-1, pp. 5-6.

The DIFC-LCIA referenced in the Subcontract was a joint venture of the Dubai International Financial Centre ("DIFC") and the London Court of International Arbitration ("LCIA") established in 2008. R. Doc. 27-1, pp. 2-4. The DIFC-LCIA adopted arbitral rules that were based upon the LCIA's existing rules and established that the LCIA would oversee certain aspects of the proceedings, such as the functions of the registrar, and could "decide to administer arbitration directly, in whole or in part, if it deems this appropriate under the circumstances." *Id.* at p. 4. However, in September 2021, the Government of Dubai issued Decree No. 34 ("Decree 34"), which effectively closed the DIFC-LCIA institution referenced in the Subcontract. *Id.* at p.

---

[2] Specifically, Schedule E of the Subcontract states, in relevant part:
> Provided that CONTRACTOR [i.e., DISA/Defendants] has not elected to pursue resolution of a SUBCONTRACTOR [i.e., Plaintiff, Baker Hughes] Claim or Other Claim under Paragraph 20.4 of this Subcontract by arbitration in Saudia Arabia in accordance with Attachment I to this Schedule "E", any Other Claim arising out of or relating to this Subcontract or any other agreements arising out of or relating to it, including but not limited to any question regarding its existence, formation, performance, interpretation, validity or termination, and which is not settled by agreement or otherwise fully and finally resolved between the Parties pursuant to Paragraph 20 of Schedule "A" hereof, shall be referred to mediation in accordance with the Mediation Rules of the Dubai International Financial Center ("DIFC") London Court of International Arbitration ("LCIA") (the "Mediation Rules") from time to time in force, which Rules are deemed to be incorporated by reference herein. Subject to any scheduling restrictions of the DIFC LCIA which make it impossible to conduct mediation proceedings within such time period, if the dispute is not settled by mediation within thirty (30) days of the commencement of the mediation, or such further period as the Parties shall agree in writing, *the dispute shall be referred by either Party to and finally resolved by arbitration under the Arbitration Rules of the DIFC LCIA (the "Rules") from time to time in force*, which Rules are deemed to be incorporated by reference herein (save for Article 5.6 which is hereby expressly excluded). *The Seat, or legal place, of the arbitration shall be the DIFC, Dubai, United Arab Emirates.* The arbitration shall be conducted in the English language.

R. Doc. 8-2, p. 94 (emphasis added).

3

6 & n.3. Decree 34 also established the Dubai International Arbitration Centre ("DIAC"). *Id.* at p. 6. Shortly thereafter, the DIAC and the LCIA executed an agreement in which the LCIA would administer all DIFC-LCIA cases commenced on or before March 20, 2022, while all actions referring to the DIFC-LCIA Rules commenced on or after March 21, 2022, shall be administered by the DIAC, which adopted rules similar to those of the DIFC-LCIA. *Id.* at p. 7.

On March 7, 2023, Plaintiff filed suit in Louisiana state court, asserting breach of contract claims against Defendants. R. Doc. 1-1. Defendants removed the action to this Court on April 26, 2023, R. Doc. 1, and subsequently moved to dismiss the action or, in the alternative, to compel arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and its implementing legislation. R. Doc. 8.

On November 6, 2023, this Court denied Defendants' motion, holding that because the parties agreed to arbitrate in a now-unavailable forum, Schedule E was invalid and unenforceable. R. Doc. 19, pp. 5-6. Defendants appealed to the Fifth Circuit, R. Doc. 20, and on January 27, 2025, the Fifth Circuit reversed this Court's ruling, holding that the Subcontract reflected the parties' dominant intent to resolve disputes through arbitration and, therefore, this Court erred in declining to compel arbitration. R. Doc. 27-1, pp. 26-29. The Fifth Circuit remanded the matter with instructions for this Court to determine whether the DIFC-LCIA Rules referenced in the Subcontract can be applied by an available arbitral forum consistent with the parties' objective intent, and, if not, to consider whether arbitration should be compelled in Saudi Arabia pursuant to Schedule A of the Subcontract. *Id.* at 29. Following remand, the parties submitted briefing addressing the issues identified by the Fifth Circuit. R. Docs. 30, 39, 40.

Since submitting their briefs of the issues on remand, each party appears to have attempted to initiate arbitration in a different forum. First, Defendants claim that Plaintiff unilaterally

4

attempted to initiate arbitration in the London Court of International Arbitration ("LCIA") under the LCIA Arbitration Rules on October 16, 2025. *See* R. Doc. 44-2, pp. 4-5. Then, on November 25, 2025, Defendants elected to arbitrate Plaintiff's claims arising under the Subcontract in Saudi Arabia, pursuant to Schedule A of the Subcontract. R. Doc. 41-1, pp. 1-5. Defendants filed a copy of the notice to Plaintiff regarding this election with the Court on December 3, 2025. R. Doc. 41. Plaintiff filed a response with the Court, in which it claims that Defendants had agreed to proceed with arbitration at the LCIA in an email dated May 27, 2025. R. Doc. 42, pp. 5-7. Accordingly, Plaintiff argued, "Defendants' purported election of Saudi arbitration is without effect," and Plaintiff planned to proceed with its arbitration at the LCIA. R. Doc. 42, p. 8. However, Defendants pointed out in their reply that the referenced email from Defendants' counsel only stated that Defendants were "amenable to LCIA arbitration," and the email also indicated "that it was still necessary 'to execute an amendment [to the Subcontract.]'" R. Doc. 43, p. 9 (citing R. Doc. 42-10, p. 1). Additionally, Defendants note that, per the terms of the Subcontract, all amendments must be in writing and signed by both parties under the laws of Saudi Arabia. *Id.* at pp. 10-11. For these reasons, Defendants argue that the email referenced by Plaintiff did not constitute an amendment to the Subcontract. *See id.* at pp. 8-11.

On January 23, 2026, Defendants filed a Motion for Issuance of Immediate Stay and/or Immediate Restraining Order/Preliminary Injunction Against Plaintiff (R. Doc. 44), seeking an expedited order immediately staying and/or immediately restraining and enjoining Plaintiff from "all actions inconsistent" with allowing this Court to decide on the issues on remand, including its "continued circumvention of this Court's jurisdiction and authority by attempting to have an alternate forum rule upon the [] issues." R. Doc. 44-2, pp. 1-2. The parties are currently briefing the issues raised in Defendant's Motion. *See* R. Doc. 46.

5

## II. LAW AND ANALYSIS

On remand, this Court is tasked with determining (1) whether the DIFC-LCIA Rules referenced in the Subcontract can be applied by an available arbitral forum consistent with the parties' objective intent and (2) if not, whether arbitration should be compelled in Saudi Arabia pursuant to Schedule A of the Subcontract. R. Doc. 27-1, p. 29.

### a. Governing Law

"[A]rbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA provides district courts with jurisdiction to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United State. *Id.* § 206. The United States Supreme Court has interpreted the FAA as reflecting a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Accordingly, the FAA only allows district courts to issue an order compelling arbitration "in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. However, district courts do have the power to appoint an arbitrator in certain circumstances, *see id.* § 5, and the Fifth Circuit noted on appeal that, "where the parties' dominant purpose was not to set an exclusive forum and instead was to arbitrate generally, courts will compel arbitration in an alternate forum." R. Doc. 27-1, p. 22

(collecting cases).

Here, the Fifth Circuit has held that "the text of Schedule E [of the Subcontract] designates only a set of rules [i.e., the DIFC-LCIA Rules] and not a particular arbitral forum," adding that even if "the parties implicitly designated the DIFC-LCIA as a forum, that designation is not integral to the subcontract; rather, their dominant purpose was to arbitrate generally." R. Doc. 27-1, pp. 16, 24. Essentially, the issue presently before the Court is not *whether* to compel arbitration, but rather *before which forum* arbitration should proceed.

### b. The Parties' Positions on Remand

Regarding the issue of whether DIFC-LCIA Rules can be applied by an available arbitral forum consistent with the parties' objective intent, Plaintiff argues that the LCIA is the only available forum that can apply the DIFC-LCIA Rules, *see* R. Doc. 30, whereas Defendant argues that multiple options, including the DIAC, exist, *see* R. Doc. 39. In support of its assertion that arbitration may only proceed before the LCIA, Plaintiff first highlights that the DIFC-LCIA Rules to which the parties agreed "explicitly empower the LCIA with the authority to" set deadlines, allow amendments to arbitral demands or responses, appoint the arbitral tribunal, decide an application for appointment of an emergency arbitrator, revoke an arbitrator's appointment, consolidate arbitrations, and determine arbitration costs. R. Doc. 30, p. 5 (citing R. Doc. 30-2). Next, it argues that "the language of the Subcontract itself demonstrates the parties' objective intent to have the LCIA act as the administrator of the arbitration." *Id.* at p. 6. Indeed, Schedule E of the Subcontract does state, in pertinent part:

> Unless otherwise agreed in writing between the Parties, the number of arbitrators shall be three (3). The Parties shall each nominate one arbitrator for appointment *by the LCIA Court* in accordance with the [Arbitration Rules of the DIFC-LCIA]. Within twenty-eight (28) days of the nomination of the Respondent's arbitrator, the Party-nominated arbitrators shall together nominate the third arbitrator (Chairman) for appointment *by the LCIA Court*; but if, by the end of that period, the Party-

7

> nominated arbitrators have failed to make such joint nomination, the Chairman shall be nominated and appointed *by the LCIA Court*.

R. Doc. 8-2, pp. 94-95 (emphasis added). Because "no other arbitration society . . . has access to the LCIA Court," Plaintiff argues, "an arbitration proceeding with any arbitration society other than the LCIA could not meet the objective intent of the parties." R. Doc. 30, p. 6.

Plaintiff further contends that submitting to arbitration with the DIAC would be "particularly problematic" because (1) the DIAC existed when the Subcontract was executed, and this forum was not chosen and (2) "the Dubai government expressly cut ties with the LCIA when it dissolved the DIFC-LCIA[;]" therefore, the "DIAC is not supervised by the well-known, highly respected LCIA." *Id.* Because the partnership between Dubai and the LCIA was "a significant factor for parties agreeing to arbitration pursuant to the DIFC-LCIA Rules," Plaintiff contends that arbitration with the DIAC cannot meet the objective intent of the parties. *Id.*

Defendants, on the other hand, argue that "the forum for arbitration should be either in Dubai, the DIFC, or Saudi Arabia; not 'only' in the [LCIA] in London, England, under an unspecified set of arbitration rules as advocated for by [Plaintiff]." R. Doc. 39, p. 1. First, Defendants contend that the DIAC remains an available arbitration forum that satisfies the parties' objective intent under the Subcontract. *Id.* at pp. 5-7. Defendants note that the Fifth Circuit, while noting that the Subcontract calls for the "seat" of arbitration to be the DIFC in Dubai, "clarified that '[t]he "seat" of an arbitration sets the legal (not geographic) location of the arbitration' and 'generally determines the *lex arbitri* and the courts with supervisory jurisdiction over the arbitration.'" *Id.* at p. 5 (citing R. Doc. 27-1, p. 3) (alterations in original). Therefore, Defendants argue, the combination of the Subcontract setting the DIFC as the "seat" of arbitral proceedings and the DIFC-LCIA as the rules-selection clause "establish the applicable law governing any arbitration (i.e., the DIFC Arbitration Law) and the courts with the supervisory jurisdiction to

8

enforce those laws (i.e., the DIFC Court)." *Id.* at p. 6.

Defendants also point to the Fifth Circuit noting that "the DIAC rules are very similar to those of the DIFC-LCIA" as further support for their argument. *Id.* (citing R. Doc. 27, pp. 7, 21). As discussed in the Fifth Circuit's opinion, the DIAC rules contain "nearly identical requirements for the claim-and-defense process, *the nominating and challenging of arbitrator appointments*, and the rendering of awards," and because the DAI transferred to the DIAC its list of arbitrators, mediators, and experts, the organization's access to experienced LCIA officials "appears unchanged." R. Doc. 27-1, p. 21 (citing THE SUPREME LEGIS. COMM. IN THE EMIRATE OF DUBAI, DECREE NO. 34 Art. 5(a)(2),(4)) (emphasis added). Finally, Defendants direct the Court to *Lewis v. UBS Financial Services, Inc.*, 818 F. Supp. 2d 1161 (N.D. Cal. 2011), a case highlighted by the Fifth Circuit in its opinion, in which a district court "held that where an agreement designates a forum and its rules and that forum gets replaced by a successor, the court may compel arbitration in the successor institution." R. Doc. 39, pp. 6-7 (citing R. Doc. 27-1, p. 27).

In its reply brief, Plaintiff claims that Defendants' reliance on *Lewis* is misplaced because the successor forum in *Lewis* was contemplated as a possible forum in the parties' agreement and was merely a renamed version of the originally sought forum. R. Doc. 40, p. 4. Plaintiff further argues that "the dissolution of the DIFC-LCIA and the Dubai government's decision to restructure DIAC does not make DIAC the successor to the DIFC-LCIA" because the DIFC-LCIA was a "joint venture involving the LCIA" whereas the DIAC "lack[s] any involvement of the LCIA." *Id.* at pp. 4-5. Plaintiff also reiterates its argument that the parties' agreement to arbitrate under the DIFC-LCIA Rules mandates arbitration before the LCIA and asserts that Defendants failed to address this argument. *Id.* at pp. 1-2. Additionally, Plaintiff claims that Defendants' argument relies on dicta in which the Fifth Circuit stated that the DIAC rules are functionally identical to

9

those of DIFC-LCIA, adding that these similarities do not outweigh the fact that LCIA supervision is "necessitated under the agreed-upon DIFC-LCIA Rules" whereas the LCIA does not supervise arbitrations referred to the DIAC. *Id.* at p. 3. In support, Plaintiff notes that "neither the Fifth Circuit nor Defendants address how DIAC could apply the DIFC-LCIA Rules when those Rules allow the LCIA to take specific actions in the arbitration." *Id.* at p. 4.

Regarding the second issue before the Court—whether arbitration should be compelled in Saudi Arabia pursuant to Schedule A if no forum is available to apply the DIFC-LCIA Rules—Defendants "maintain that Saudi Arabia arbitration remains a viable option" under the Subcontract because Schedule A expressly permits them to elect arbitration in Saudi Arabia and that the Court should compel arbitration in that forum if it determines that no available forum can apply the DIFC-LCIA Rules consistent with the parties' objective intent. *Id.* at p. 7.

Plaintiff, on the other hand, remains firm in its assertion that arbitration should not take place in Saudi Arabia. R. Doc. 40, p. 5. First, it claims that Saudi Arabia is not a viable forum to apply the DIFC-LCIA Rules because "Defendants provide no evidentiary support for their argument and provide no evidence that the LCIA could take action in any arbitration forum in Saudi Arabia." *Id.* at p. 5. Second, it argues that "[b]ecause the LCIA is an available forum to apply the DIFC-LCIA Rules . . ., no basis exists to consider compelling arbitration pursuant to Schedule A of the Subcontract." *Id.*

    c. *The Court's Analysis of Issues on Remand*

The Court will first consider whether the DIFC-LCIA Rules referenced in Schedule E of the Subcontract can be applied by an available arbitral forum consistent with the parties' objective intent. In doing so, the Court is guided by the Fifth Circuit's holding that Schedule E designates a set of arbitration rules rather than an exclusive arbitral forum, and that even if the parties implicitly designated the DIFC-LCIA forum, that designation was not integral to the Subcontract given the

10

parties' dominant intent to arbitrate generally. *See* R. Doc. 27-1, pp. 16, 24.

As an initial matter, the Court finds Plaintiff's contention that arbitration must proceed exclusively before the LCIA to be unpersuasive. Although Schedule E references appointment of arbitrators "by the LCIA Court," the referenced provision only concerns the administration of the arbitral process and does not constitute an exclusive forum-selection clause. As the Fifth Circuit recognized, "where the parties' dominant purpose was not to set an exclusive forum and instead was to arbitrate generally, courts will compel arbitration in an alternate forum." R. Doc. 27-1, p. 22. Moreover, the FAA authorizes district courts to address failures in the arbitrator-selection process when the agreed-upon method of arbitrator selection cannot be followed due to the unavailability of the designated arbitral institution. *See* 9 U.S.C. § 5. Accordingly, Subsection E's references to the "LCIA Court" do not preclude arbitration from proceeding in another forum consistent with the parties' agreement to follow the DIFC-LCIA Rules.

The remaining question, therefore, is whether an available forum exists that is capable of applying the DIFC-LCIA Rules consistent with that intent. The Court finds that the DIAC is capable of doing so. As explained by the Fifth Circuit, after Decree 34's dissolution of the DIFC-LCIA, the DIAC assumed responsibility for administering arbitration proceedings under the DIFC-LCIA Rules commencing after March 21, 2022. R. Doc. 27-1, pp. 6-7. The Fifth Circuit expressly found that the DIAC rules are substantially similar to the DIFC-LCIA Rules, including nearly identical procedures governing the presentation of claims and defenses, the nomination and challenge of arbitrators, and the rendering of arbitral awards. *Id.* at p. 21. Further, Plaintiff's concerns regarding apparent functional differences between the DIFC-LCIA and the DIAC are counterbalanced by the Fifth Circuit's findings that the DIAC has a near-equivalent set of rules and preserved access to experienced LCIA officials.

Plaintiff's contention that the Fifth Circuit's discussion of similarities between the DIFC-LCIA and the DIAC constitutes dicta is without merit. That discussion was directly tied to the Fifth Circuit's remand instruction that this Court determine whether the DIFC-LCIA Rules can be applied by an available arbitral forum consistent with the parties' objective intent. *See id.* at pp. 21, 29. This Court is bound by the Fifth Circuit's reasoning insofar as it informs that inquiry. Plaintiff also argues that *Lewis*, 818 F. Supp. 2d 1161, is distinguishable because the successor forum in that case was a renamed continuation of the originally designated arbitral forum and was allegedly contemplated by the parties. The Court finds this argument unpersuasive. As the Fifth Circuit recognized, *Lewis* stands for the principle that where parties agree to arbitrate under specified rules and the designated arbitral institution becomes unavailable, a court may compel arbitration before a successor institution capable of administering arbitration consistent with those rules. *See* R. Doc. 27-1, p. 27. Here, as in *Lewis*, the relevant inquiry regarding a successor forum is not institutional identity but functional continuity. Accordingly, Plaintiff's emphasis on the absence of LCIA supervision over DIAC proceedings does not alter the Court's analysis. Considering those findings, the Court concludes that arbitration administered by the DIAC, seated in the DIFC as specified in Schedule E, is capable of applying the DIFC-LCIA Rules in a manner consistent with the parties' dominant intent to arbitrate under the DIFC-LCIA Rules.

Finally, because the Court finds that an available arbitral forum exists to apply the DIFC-LCIA Rules, it need not reach the alternative question of whether arbitration should be compelled in Saudi Arabia pursuant to Schedule A of the Subcontract. *See id.* at p. 29 (directing consideration of arbitration in Saudi Arabia only if no available forum can apply the DIFC-LCIA Rules).

### d. *Defendants' Motion to Stay or for Restraining Order/Preliminary Injunction*

Because Defendants' Motion for Issuance of Immediate Stay and/or Immediate Restraining

Order/Preliminary Injunction Against Plaintiff (R. Doc. 44) seeks an immediate stay or restraining order enjoining Plaintiff from seeking arbitration in the LCIA before this Court has had an opportunity to decide the issues on remand, and the Court has decided the issues on remand in this Order, the Court finds that the relief requested by Defendants in the Motion is no longer necessary and will dismiss the Motion as moot.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss for *Forum Non Conveniens* or to Compel Arbitration and Stay Pending Arbitration (R. Doc. 8) is **GRANTED** to the extent that it seeks to compel arbitration and **DENIED** to the extent that it seeks dismissal.

**IT IS FURTHER ORDERED** that the parties proceed to arbitration administered by the Dubai International Arbitration Centre ("DIAC"), with the seat of arbitration in the Dubai International Financial Centre ("DIFC"), Dubai, United Arab Emirates, in accordance with the DIFC-LCIA Arbitration Rules as referenced in Schedule E of the Subcontract.

**IT IS FURTHER ORDERED** that Defendants' Motion for Issuance of Immediate Stay and/or Restraining Order/Preliminary Injunction Against Plaintiff (R. Doc. 44) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **STAYED** and **ADMINISTRATIVELY CLOSED** pending completion of arbitration.

New Orleans, Louisiana, this 30th day of January 2026.

                                        GREG GERARD GUIDRY
                                        UNITED STATES DISTRICT JUDGE