UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BAKER HUGHES SAUDI ARABIA CO. LTD. | CIVIL ACTION |
| VERSUS | NO: 23-1396 |
| DYNAMIC INDUSTRIES, INC., DYNAMIC INDUSTRIES INTERNATIONAL, L.L.C., and DYNAMIC INDUSTRIES INTERNATIONAL HOLDINGS, INC. | SECTION: T (4) |

## ORDER AND REASONS

Before the Court is a Motion for Issuance of Immediate Stay and/or Restraining Order/Preliminary Injunction Against Plaintiff (R. Doc. 51), filed by Defendants, Dynamic Industries, Inc. ("DI"), Dynamic Industries International, L.L.C. ("DII"), and Dynamic Industries International Holdings, Inc. ("DIIH") (collectively, "Defendants"). Plaintiff, Baker Hughes Saudi Arabia Co. Ltd. ("Baker Hughes"), has filed a response in opposition to the Motion, R. Doc. 55, and Defendants have filed a reply, R. Doc. 60. Having considered the record, the parties' arguments, and the applicable law, the Court will **DENY** the Motion for the following reasons.

## I. BACKGROUND

This case arises from a contractual dispute between Plaintiff and Defendants.[1] On December 20, 2017, Plaintiff contracted with Defendants to supply materials, products, and services for an oil and gas project being performed by Defendants in Saudi Arabia (the

---

[1] The challenged contract is facially between Plaintiff and Dynamic Industries Saudi Arabia, Ltd. ("DISA"). *See* R. Doc. 8-2, pp.1-4 ("Subcontract for Procurement and Construction" between DISA and Plaintiff). However, Plaintiff asserts that DISA "is merely a shell company and alter ego of" the Defendants named in this suit. R. Doc. 1-1 at 3. Although Defendants contend in this instant Motion that they "are neither parties to, guarantors of or are in any way liable under the Subcontract," R. Doc. 51-1, p. 10, this Order will use the term "Defendants" to refer to both DISA and the defendants named in this suit.

1

"Subcontract"). R. Doc. 1-1, p. 3. Plaintiff alleges that it fully performed its obligations under the Subcontract, but that Defendants have failed to pay $1.355 million owed to Plaintiff for those services. *Id.* at p. 4. The Subcontract contains two provisions governing a dispute resolution process. R. Doc. 27-1, p. 4. First, Schedule A allows Defendants to elect to arbitrate any dispute arising out of the subcontract in Saudi Arabia. R. Doc. 8-2, pp. 73-76; *see also* R. Doc. 27-1, p. 5. Second, Schedule E provides an alternative dispute-resolution provision, calling first for mediation and then, if mediation is unsuccessful, for arbitration. R. Doc. 8-2; *see also* R. Doc. 27-1, pp. 5-6. Schedule E specifies that arbitration shall occur in accordance with the Arbitration Rules of the Dubai International Financial Center London Court of International Arbitration ("DIFC-LCIA"), with the seat of arbitration designated as the Dubai International Financial Centre ("DIFC").[2] R. Doc. 8-2, p. 94; *see also* R. Doc. 27-1, pp. 5-6.

The DIFC-LCIA referenced in the Subcontract was a joint venture of the Dubai International Financial Centre ("DIFC") and the London Court of International Arbitration ("LCIA") established in 2008. R. Doc. 27-1, pp. 2-4. The DIFC-LCIA adopted arbitral rules that

---

[2] Specifically, Schedule E of the Subcontract states, in relevant part:

> Provided that CONTRACTOR [i.e., DISA/Defendants] has not elected to pursue resolution of a SUBCONTRACTOR [i.e., Plaintiff, Baker Hughes] Claim or Other Claim under Paragraph 20.4 of this Subcontract by arbitration in Saudi Arabia in accordance with Attachment I to this Schedule "E", any Other Claim arising out of or relating to this Subcontract or any other agreements arising out of or relating to it, including but not limited to any question regarding its existence, formation, performance, interpretation, validity or termination, and which is not settled by agreement or otherwise fully and finally resolved between the Parties pursuant to Paragraph 20 of Schedule "A" hereof, shall be referred to mediation in accordance with the Mediation Rules of the Dubai International Financial Center ("DIFC") London Court of International Arbitration ("LCIA") (the "Mediation Rules") from time to time in force, which Rules are deemed to be incorporated by reference herein. Subject to any scheduling restrictions of the DIFC LCIA which make it impossible to conduct mediation proceedings within such time period, if the dispute is not settled by mediation within thirty (30) days of the commencement of the mediation, or such further period as the Parties shall agree in writing, *the dispute shall be referred by either Party to and finally resolved by arbitration under the Arbitration Rules of the DIFC LCIA (the "Rules") from time to time in force*, which Rules are deemed to be incorporated by reference herein (save for Article 5.6 which is hereby expressly excluded). *The Seat, or legal place, of the arbitration shall be the DIFC, Dubai, United Arab Emirates.* The arbitration shall be conducted in the English language.

R. Doc. 8-2, p. 94 (emphasis added).

were based upon the LCIA's existing rules and established that the LCIA would oversee certain aspects of the proceedings, such as the functions of the registrar, and could "decide to administer arbitration directly, in whole or in part, if it deems this appropriate under the circumstances." *Id.* at p. 4. However, in September 2021, the Government of Dubai issued Decree No. 34 ("Decree 34"), which effectively closed the DIFC-LCIA institution referenced in the Subcontract. *Id.* at p. 6 & n.3. Decree 34 also established the Dubai International Arbitration Centre ("DIAC"). *Id.* at p. 6. Shortly thereafter, the DIAC and the LCIA executed an agreement in which the LCIA would administer all DIFC-LCIA cases commenced on or before March 20, 2022, while all actions referring to the DIFC-LCIA Rules commenced on or after March 21, 2022, shall be administered by the DIAC, which adopted rules similar to those of the DIFC-LCIA. *Id.* at p. 7.

On March 7, 2023, Plaintiff filed suit in Louisiana state court, asserting breach of contract claims against Defendants. R. Doc. 1-1. Defendants removed the action to this Court on April 26, 2023, R. Doc. 1, and subsequently moved to dismiss the action or, in the alternative, to compel arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and its implementing legislation. R. Doc. 8.

On November 6, 2023, this Court denied Defendants' motion, holding that because the parties agreed to arbitrate in a now-unavailable forum, Schedule E was invalid and unenforceable. R. Doc. 19, pp. 5-6. Defendants appealed to the Fifth Circuit, R. Doc. 20, and on January 27, 2025, the Fifth Circuit reversed this Court's ruling, holding that the Subcontract reflected the parties' dominant intent to resolve disputes through arbitration and, therefore, this Court erred in declining to compel arbitration. R. Doc. 27-1, pp. 26-29. The Fifth Circuit remanded the matter with instructions for this Court to determine whether the DIFC-LCIA Rules referenced in the Subcontract can be applied by an available arbitral forum consistent with the parties' objective

3

intent, and, if not, to consider whether arbitration should be compelled in Saudi Arabia pursuant to Schedule A of the Subcontract. *Id.* at 29. Following remand, the parties submitted briefing addressing the issues identified by the Fifth Circuit. R. Docs. 30, 39, 40.

Subsequently, each party attempted to initiate arbitration in a different forum. First, Defendants claim that Plaintiff unilaterally attempted to initiate arbitration in the London Court of International Arbitration ("LCIA") under the LCIA Arbitration Rules on October 16, 2025. *See* R. Doc. 44-2, pp. 4-5. Then, on November 25, 2025, Defendants elected to arbitrate Plaintiff's claims arising under the Subcontract in Saudi Arabia, pursuant to Schedule A of the Subcontract. R. Doc. 41-1, pp. 1-5. Defendants filed a copy of the notice to Plaintiff regarding this election with the Court on December 3, 2025. R. Doc. 41. Plaintiff filed a response with the Court, in which it claims that Defendants had agreed to proceed with arbitration at the LCIA in an email dated May 27, 2025. R. Doc. 42, pp. 5-7. Accordingly, Plaintiff argued, "Defendants' purported election of Saudi arbitration is without effect," and Plaintiff planned to proceed with its arbitration at the LCIA. R. Doc. 42, p. 8. However, Defendants pointed out in their reply that the referenced email from Defendants' counsel only stated that Defendants were "amenable to LCIA arbitration," and the email also indicated "that it was still necessary 'to execute an amendment [to the Subcontract.]'" R. Doc. 43, p. 9 (citing R. Doc. 42-10, p. 1). Additionally, Defendants note that, per the terms of the Subcontract, all amendments must be in writing and signed by both parties under the laws of Saudi Arabia. *Id.* at pp. 10-11. For these reasons, Defendants argue that the email referenced by Plaintiff did not constitute an amendment to the Subcontract. *See id.* at pp. 8-11.

On January 23, 2026, Defendants filed a Motion for Issuance of Immediate Stay and/or Immediate Restraining Order/Preliminary Injunction Against Plaintiff (R. Doc. 44), seeking an expedited order immediately staying and/or immediately restraining and enjoining Plaintiff from

4

"all actions inconsistent" with allowing this Court to decide on the issues on remand, including its "continued circumvention of this Court's jurisdiction and authority by attempting to have an alternate forum rule upon the [] issues." R. Doc. 44-2, pp. 1-2.

On January 30, 2026, the Court issued its Order and Reasons ("the Arbitration Order"), finding that arbitration may be compelled before the Dubai International Arbitration Centre ("DIAC") in a manner consistent with both the parties' dominant intent and the Fifth Circuit's instructions on remand. R. Doc. 49. Additionally, the Court found that, because an available arbitral forum exists to apply the DIFC-LCIA Rules, it need not reach the alternative question of whether arbitration should be compelled in Saudi Arabia pursuant to Schedule A of the Subcontract. *Id.* (citing R. Doc. 27-1, p. 29 (directing consideration of arbitration in Saudi Arabia only if no available forum can apply the DIFC-LCIA Rules)). Accordingly, the Court ordered that the parties proceed to arbitration administered by the DIAC, with the seat of arbitration in the DIFC, in accordance with the DIFC-LCIA Arbitration Rules as referenced in Schedule E of the Subcontract. *Id.*

Additionally, because Defendants' Motion for Issuance of Immediate Stay and/or Immediate Restraining Order/Preliminary Injunction Against Plaintiff (R. Doc. 44) sought a stay or restraining order enjoining Plaintiff from seeking arbitration in the LCIA *before the Court had an opportunity to decide the issues on remand*, the Court found that the relief requested by Defendants in that Motion was no longer necessary and denied the motion as moot. *Id.*

On February 25, 2026, Plaintiff filed an *Ex Parte* Notice, informing the Court that "Baker Hughes is preparing its Request for Arbitration, which shall be submitted to the DIAC in due course." R. Doc. 50, p. 1. Plaintiff also informed the Court that the Tribunal appointed by the LCIA requested a Case Management Conference, and Baker Hughes had provided a copy of this Court's

Arbitration Order to the LCIA Tribunal, "ma[king] itself available to the Tribunal to discuss the Order, its effect on the pending LCIA processes, and any other issues the Tribunal may want to consider with respect to same." *Id.*

On March 3, 2026, Defendants filed the instant Motion, requesting that the Court "immediately stay and/or immediately restrain and enjoin [Plaintiff] from (i) all further actions inconsistent with [the Arbitration Order] and (ii) continuing to circumvent this Court's jurisdiction and authority by having the LCIA rule upon any issues concerning [Plaintiff's] breach of Subcontract claims against Defendants." R. Doc. 51-9, pp. 1-2. Defendants also request that the Court order Plaintiffs to (i) notify the LCIA Registrar and the LCIA Panel of its order and (ii) formally withdraw its Request for Arbitration before the LCIA. *Id.* at p. 2. Additionally, Defendants ask the Court to reconsider the relevance of the Defendants' election to require Plaintiffs to arbitrate the claims in Saudi Arabia pursuant to Schedule A of the subcontract. *Id.* Finally, based upon Plaintiffs' "repeated and blatant violations" of the Arbitration Order, Defendants "seek the additional relief of an award of sanctions in the form of fees and costs" associated with the preparation and filing of their initial Motion to Stay (R. Doc. 44), the filing of the instant motion, and "all fees expended relative to the LCIA proceeding since [the Arbitration Order]." *Id.*

In its response, Plaintiff contends that it has complied with the Arbitration Order, stating that it "has unequivocally advised Defendants and this Court that it will be submitting the underlying dispute to the DIAC." R. Doc. 55, pp. 1-2. "Because [Plaintiff] has confirmed that it will proceed to arbitration with the DIAC," Plaintiff argues, the instant Motion "does not present to this Court a judiciable controversy" and the Motion should be denied. *Id.* at p. 2. Plaintiff further argues that Defendants' "actual motivation" in submitting the Motion is the request that the Court

reconsider the relevance of their election to arbitrate the claims in Saudi Arabia. *Id.* at pp. 2-3. Plaintiff contends that Defendants are incorrect in asserting that "such reconsideration is warranted in light of [Plaintiff's] alleged 'disregard for this Court's explicit instructions'" because Plaintiff is complying with the Arbitration Order. *Id.* at p. 3. Thus, Plaintiff argues that "[n]o legal basis or other justification exists for this request" and that the request is "frivolous, without merit, and serves only to waste this Court's valuable time and resources." *Id.*

In their reply, Defendants argue that there is a judiciable controversy because Plaintiff "cannot claim an intent to prosecute their claims against Defendants before the DIAC exclusively (as Ordered by this Court) while at the same time progressing the same underlying claims against Defendants at the LCIA." R. Doc. 60, p. 2. Defendants further contend that Plaintiff's failure to withdraw the LCIA arbitration demonstrates noncompliance with the Arbitration Order and warrants injunctive relief. *Id.* at p. 3. Defendants also filed an email with the court in which Plaintiff recently asked the LCIA to stay its proceedings pending the outcome of the DIAC arbitration. R. Doc. 60, pp. 5-6 (citing R. Doc. 60-1, pp. 1-2).

## II. LAW AND ANALYSIS

Rule 65 of the Federal Rules of Civil Procedure provides that a district court "may issue a temporary restraining order without written or oral notice to the adverse party only if (a) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (b) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). A preliminary injunction may only be issued "on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

"Temporary restraining orders and preliminary injunctions are extraordinary forms of relief

and require plaintiffs to carry an onerous burden." *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. CV 17-491, 2020 WL 10486334, at *4 (E.D. La. Oct. 16, 2020) (quoting *Scott v. S. Elec. Supply Co.*, No. 3:13-CV-119, 2013 WL 12108746, at *1 (N.D. Miss. May 14, 2013) (citing *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Trinity USA Operating, LLC v. Barker*, 844 F. Supp. 2d 781, 785 (S.D. Miss. 2011))). "Temporary restraining orders function to preserve the status quo by preventing irreparable harm until the preliminary injunction hearing." *Id.* (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

It is well-settled that to obtain a temporary restraining order, the movant must demonstrate all four of the following elements: (1) a substantial likelihood of prevailing on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted, and (4) the injunction will not disserve the public interest. *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). A temporary restraining order is not warranted when the movant fails to demonstrate irreparable injury. *See, e.g.*, *Sanders v. Nat'l Missionary Baptist Convention of Am.*, No. CV 12-2404, 2012 WL 12874264, at *1 (E.D. La. Oct. 3, 2012). "Ultimately, temporary restraining orders are extraordinary relief and are rarely issued." *Id.* (citing *Treen v. Brown*, No. 10-3359, 2010 WL 4027714, at *1 (E.D. La. Oct. 13, 2010)) (internal quotation marks omitted). The decision to grant or deny a temporary restraining order, like that of a preliminary injunction, is within the sound discretion of the district court. *See Miss. Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "The party requesting a temporary restraining order must clear the high hurdle of demonstrating that it meets the requirements of Rule 65(b) and the four-element standard." *Cajun Servs. Unlimited*, 2020 WL 10486334, at *4.

8

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. *See also Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 577 (5th Cir. 2005) ("District courts can enter injunctions as a means to enforce final judgments."). The grounds for relief under the All Writs Act are similar to the grounds for a preliminary injunction: a party must establish (1) that there are "no other adequate means to attain the relief he desires," (2) that his "right to issuance of the writ is clear and indisputable," and (3) that "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004). The issuing court retains discretion to determine if the writ is appropriate under the circumstances. *Id.*

Here, Defendants seek an order under either Rule 65 or the All Writs Act enjoining and restraining Plaintiff from actions inconsistent with the Court's Arbitration Order, namely, continuing to seek an LCIA ruling upon any issues concerning Plaintiff's breach of contract claims against Defendants. R. Doc. 51-9, pp. 1-2. They also seek an order directing Plaintiff to notify the LCIA Registrar and the LCIA Panel of the Arbitration Order and to formally withdraw its Request for Arbitration before the LCIA. *Id.* at p. 2.

The Court finds that the requested relief is not warranted under either scheme. First, a restraining order or injunction is not warranted because Defendants have not shown a substantial threat of irreparable injury. Plaintiff represents that it intends to comply with the Court's Arbitration Order and will initiate arbitration before the DIAC. R. Doc. 55, pp. 1-2. Additionally, after Defendants filed the instant Motion, Plaintiff has requested that the LCIA tribunal stay its proceedings pending the DIAC arbitration. R. Doc. 60-1, pp. 1-2. For these same reasons, the Court finds that, on the present record, relief under the All Writs Act is not appropriate under the circumstances.

The Court notes that its Arbitration Order determined the proper arbitral forum for resolution of the parties' dispute. While Plaintiff represents that it intends to initiate arbitration before the DIAC and has requested that the LCIA proceedings be stayed, the Court expects the parties to act in a manner consistent with its Arbitration Order. To the extent that any party pursues proceedings inconsistent with the Court's directive, the Court retains the authority to enforce its order and grant appropriate relief if necessary.

To the extent that Defendants request reconsideration of the Court's prior ruling regarding arbitration in Saudi Arabia pursuant to Schedule A of the Subcontract, the Court declines to revisit that issue. The Fifth Circuit instructed this Court as follows:

> We instruct the district court on remand to consider whether the DIFC-LCIA rules can be applied by any other forum that may be available—including the LCIA, DIAC, or a forum in Saudi Arabia—consistent with the parties' objective intent. *If so, we instruct the district court to compel arbitration in that forum*. If not, we instruct the district court to consider whether to otherwise compel arbitration in Saudi Arabia pursuant to the terms of Schedule A.

R. Doc. 27-1, p. 29 (emphasis added). Having determined that the DIFC-LCIA rules as intended by the parties may be applied by the institution's successor, the DIAC, *see* R. Doc. 49, the Court must compel arbitration in the DIAC rather than considering arbitration in Saudi Arabia pursuant to the terms of Schedule A. Additionally, Defendants recognize in their memorandum in support of the Motion that the Fifth Circuit "established a decision waterfall that instructed this Court to consider compelling arbitration in Saudi Arabia *only if a forum was not available to apply the DIFC-LCIA rules*." R. Doc. 51-1, p. 16 (emphasis added). Defendants argue that the Court should reconsider the applicability of arbitration in Saudi Arabia because the Fifth Circuit's instructions were issued before Defendants made their election to arbitrate in Saudi Arabia in November 2025, but the Court finds this argument to be unpersuasive and sees no connection between Plaintiff's alleged conduct and any need to consider an alternate forum.

10

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Issuance of Immediate Stay and/or Restraining Order/Preliminary Injunction Against Plaintiff (R. Doc. 51) is **DENIED**.

New Orleans, Louisiana, this 11th day of March 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE